UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY FRANKLIN,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>　　　　　　Defendant. | No. ED CV 04-01348-SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.　INTRODUCTION**

　　　Plaintiff Larry Franklin ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner" or the "Agency") denying his application for Disability Insurance Benefits and Supplemental Security Income. Alternatively, Plaintiff asks the Court to remand the matter for a new administrative hearing. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' Joint Stipulation filed on June 28, 2006. For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

**II.  PROCEDURAL HISTORY**

Plaintiff filed an application for SSI benefits on September 9, 1999, based upon mental illness. (AR 171). The application was denied initially and upon reconsideration. Plaintiff filed a Request for Hearing and a hearing was held on January 23, 2001 before ALJ David M. Ganly. On March 30, 2001, ALJ Ganly issued an unfavorable decision. (AR 27). Plaintiff sought review before the Appeals Council. The Appeals Council remanded the case on August 8, 2003 (AR 158) and another hearing was set by ALJ Ganly, who issued a second unfavorable decision on March 24, 2004. (AR 11). Plaintiff again sought review before the Appeals Council. (AR 4). This time, however, the Appeals Council declined review and the ALJ's 2004 decision became the final decision of the Commissioner. This action followed.

**III.  FACTUAL BACKGROUND**

    **A.  <u>Plaintiff's Relevant Medical History</u>**

Many of the records concerning Plaintiff's medical history are from the various institutions where he was incarcerated for most of the 1990s. These records indicate a repeated diagnosis of schizophrenia, paranoid schizophrenia and reporting of auditory hallucinations. (AR 350-371). However, many of the records also show that Plaintiff'S

symptoms were somewhat alleviated with medication and treatment. Samples of notations from his mental health records while incarcerated include the following: "10/28/97 - Although he has residual paranoid ideation and occasional A. H. [auditory hallucinations], he was given a GAF of 65 (8/11/97). He remains under control after having stopped meds several weeks ago. Will not force meds at this time due to stable mental status and his desire to not take drugs." (AR 246); "April 20, 1995 - 'I am doing all right' Wishes to continue same med. same dosage. Diminished aud. hallucinations" (AR 300); March 02, 1995: "pt. says he is doing ok. Still hears voices at times, but 'not as much as I used to.' Has learn to disregard them. No longer feeling delusional." (AR 303); "10/20/94 - A/P during his residency on J-ward; he kept himself what appear to be an industrious person, he kept himself most of the time busy either by working on the weights program and as a helper on the kitchen. A/P over all needs to maintain to be employed and to attend all unit programming. He takes his daily meds and has not created a [illegible] disturbance." (AR 316). "9/14/94 - His somatic complaints notwithstanding, i/m [inmate] has been observed working hard on the unit . . . Psychologically, he appears stable with hearing voices occasionally. Has not had any med change recently and has not voiced any adverse side effects from his meds, sleeps well and appetite good." (AR 318). "6/29/94 - "Patient was soft spoken, maintained excellent eye contact and always looks clean and fairly well groomed. He is active during patio time despite the very hot weather and showers directly afterward. He gets along well with his peers and is appropriate to staff upon approach." (AR 325).

There is a history of both polysubstance and alcohol abuse.  (See AR 253 (substance abuse); 267 (alcohol abuse); 273 (alcohol problem); 307 (polysubstance and alcohol abuse); 320 (polysubstance abuse and alcoholism)).  However, these references appear to be historic references and not indications of current drug use.  There is no indication in the record of a positive drug test while incarcerated.

After his release from prison, Plaintiff received some medical treatment from the "Mesa Counseling Services," ("Mesa") part of the San Bernardino County Department of Behavioral Health.  (AR 396-405).  A record from Dr. E. Aziz at Mesa describes Plaintiff as follows:

> Pt. came on time, 38 y.o. african american male that lives with his wife on & off. Pt. has 10 kids from different relationships, he has 4 kids living with his wife.  Pt. admits that he spent most of his life at prison, even as a child he was in juvenile hall all the time, long HX [history] of violence and prison terms for robbery, murder, assault to the public & police officers.  Pt. admits that he has been hearing voices all of his life but it was worse since 1994 and he was receiving Haldal and [illegible] in prison, been off meds for a year, pt. assaulted a police officer in the head because voices told him to kill him.  pt. is guarded, unpredictable, trying to obtain SSI through an attorney. denies S/H [suicidal/homicidal] ideation, admits auditory hallucination, feels depressed. pt. had an extensive HX of abuse sexually as a child but doesn't want to talk about it, pt. didn't provide much HX about his family, he sleeps under

> the bridge sometimes, pt. feels that people are not there to
> hurt him, but he is easily irritated, unpredictable, denies
> use of drugs or alcohol but has HX of PCP . . .

(AR 396). At the conclusion of his evaluation, Dr. Aziz diagnosed Plaintiff as suffering from paranoid schizophrenia, 295.30. (AR 396). He found that Plaintiff had "limited insight and judgment." Dr. Aziz prescribed medication for Plaintiff's condition. (AR 397).

On October 27, 2000, Dong Lee, M.D., made the following observations:

> [Patient] denies any problem. He sees his p.o. [parole
> officer] [illegible] glad that he will be off parole on 12/5.
> He takes a walk daily - usually at park. spends his children
> daily - happy to shy [illegible] his children. No problem
> controlling anger. Taking a walk to control anger. He is
> cooperative. [illegible] still hears voices 3-4 times a day
> asking him to do bad things. talking about him. denies
> [illegible].

(AR 435). The monthly records from June 2000 through October 2000 show Plaintiff receiving treatment on a monthly basis at Mesa.

\\
\\
\\
\\
\\

**B.   Consultative Evaluations**

   **i.   Divy J. Kikani, M.D.**

Dr. Kikani, Board Eligible Psychiatrist, prepared an evaluation of Plaintiff on November 8, 1999.  The report was based upon the doctor's interview of Plaintiff and also on the doctor's review of Plaintiff's medical records.  (AR 374).  Dr. Kikani described Plaintiff's main psychiatric symptoms as perceptual disturbances.  Plaintiff reported hearing voices telling him to harm himself and harm other people.  Plaintiff also reported symptoms of paranoia, problems coping with and relating to people.  He reported periodic symptoms of mood swings, including thoughts of suicide but no specific plan.  At the time of the evaluation, Plaintiff denied receiving formal psychiatric help or taking medications.  (AR 374).

Plaintiff reported to Dr. Kikani that he was married with six children, although the record at various times reported eight or ten children.  (AR 375).  He described a past work history of doing warehouse or construction work.  (Id.).  Plaintiff reported using alcohol "off and on" but denied a history of substance abuse.  (Id.).

Dr. Kikani observed that there was nothing unusual about Plaintiff's grooming, appearance or behavior.  Speech was normal.  However, his thought processes are "altered" and he continued to report hearing voices.  Dr. Kikani noted that Plaintiff was calm and collected one moment and then agitated the next.  Plaintiff was oriented to place and person but not to time.  Memory span was impaired for recent events.

1  (AR 375). Plaintiff's general fund of knowledge was found to be poor
2  and his judgment was considered impaired. (AR 376).

4      Dr. Kikani concluded that Plaintiff is suffering from a psychotic
5  disorder. He also observed that he had a history of psychoactive
6  substance abuse and alcohol abuse. (Id.). He found that Plaintiff had
7  "moderate impairment in activities of daily living and social
8  functioning." (AR 377). He also found moderate impairment in
9  concentration, persistence and pace. Plaintiff's ability to understand,
10 carry out and remember simple instructions is mildly impaired. Dr.
11 Kikani found other mental/emotional functions to be moderately impaired
12 as well. (Id.). He found that because of his long history of
13 incarceration, history of substance abuse, and his underlying problem
14 of psychosis with perceptual disturbances, Plaintiff lacks sufficient
15 social and interpersonal skills to work productively in a normal working
16 environment. (Id.).

18     He recommended long-term psychiatric treatment and drug/alcohol
19 rehab. Dr. Kikani concluded that Plaintiff's prognosis is fair to
20 guarded and depends upon Plaintiff's ability to remain compliant with
21 his prescribed psychotropic medication and his ability to stay sober.
22 (Id.).
23 \\
24 \\
25 \\
26 \\
27 \\
28

      **ii.**    **William Stolz, Ph.D.**

Dr. William Stolz, a clinical psychologist, examined Plaintiff on September 26, 2000. Dr. Stolz described Plaintiff's medical and criminal history, as reported by Plaintiff. Plaintiff told Dr. Stolz that he was seeing a therapist every 30 days and a psychiatrist at the mental health unit in San Bernardino. (AR 408).

Dr. Stolz administered the Minnesota Multiphasic Personality Inventory ("MMPI") to Plaintiff.[1] (AR 410). Dr. Stolz remarked that the test was "invalid." He noted that Plaintiff spent several hours on the test and appeared to be cooperating, but that it was possible there was some "misinterpretation" and a lack of reading proficiency. (Id.). However, Dr. Stolz also observed that the "Weiner-Harmon, Subtle Obvious Subscales reflect exaggeration or at least considerable deviation between obvious and subtle items on depression and paranoia." (Id.).

Dr. Stoltz described the "Welsh Code" as typical of sociopaths experiencing anxiety and paranoia. (Id.). He said the test reflected an extremely withdrawn person, alienated from society and possibly experiencing hallucinatory phenomena. (Id.).

\\
\\
\\

---

[1] The MMPI is a test of personal and social adjustment based on a complex scaling of the answers to an elaborate true or false test. MedlinePlus.com (2006).

In his "mental status" portion of the report, Dr. Stoltz described Plaintiff as polite and pleasant with a nervous appearance and "somewhat flattened affect." Plaintiff was oriented to time, place and person. Although nervous, he was not overtly hostile. (AR 411). His testing showed that Plaintiff was of low average intelligence and had poor concentration. (Id.). In his summary, he described Plaintiff as withdrawn, alienated, possibly paranoid schizophrenic and on anti-psychotic medication. He recommended that, if benefits were awarded, a substitute payee would be "in order." (AR 412).

**IV. FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[2] and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

---

[2] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

> (1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.
> (2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.
> (3) Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.
> (4) Is the claimant capable of performing his past work?  If so, the claimant is found not disabled. If not, proceed to step five.
> (5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b) – 404.1520(f)(1) & 416.920(b) – 416.920(f)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett).  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking

into account the claimant's residual functional capacity,[3] age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V. THE ALJ'S DECISION**

The ALJ observed that Plaintiff was a 42-year old individual at the time of the hearing with a high school equivalent education. His past work experience includes employment as a warehouse worker and janitor. (AR 15). Plaintiff alleged that he became disabled on April 13, 1993 due to a mental impairment. (Id.).

The ALJ noted that on January 6, 2000, Ernest Giraldi, M.D., a State Agency medical Consultant, indicated that Plaintiff's parole officer informed him that Plaintiff tested positive for PCP use in September 1998, which caused a revocation of Plaintiff's parole. The

---

[3] Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

1 parole officer stated that, after Plaintiff was released again on
2 parole, he had not observed signs or symptoms of a mental impairment and
3 noted that Plaintiff related well.  The parole officer suggested that
4 Plaintiff exaggerated his symptoms.  (AR 15).  Dr. Girardi concluded
5 that Plaintiff was capable of carrying out simple instructions, making
6 simple work related decisions, etc.

   The ALJ summarized the testimony of the medical expert, Dr.
Malancharuvil, who stated that he had reviewed the relevant medical
records.  (AR 16).  He also summarized Plaintiff's testimony.  (Id.).

   The ALJ found that Plaintiff suffered from a severe mental
impairment.  (AR 17).  However, Plaintiff did not have an impairment or
combination of impairments that met or equaled a listing.  The ALJ found
that the Plaintiff retained the RFC to perform work with the limitations
found by Dr. Malancharuvil.  The ALJ found that Plaintiff's subjective
complaints "credibly establish no less of a RFC than described above."
(Id.).  Finally, the ALJ concluded that Plaintiff could perform his past
relevant work as a janitor or warehouse worker.

**VI. STANDARD OF REVIEW**

   Under 42 U.S.C. § 405(g), a district court may review the
Commissioner's decision to deny benefits.  The court may set aside the
Commissioner's decision when the ALJ's findings are based on legal error
or are not supported by substantial evidence in the record as a whole.
Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing

Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**VII. DISCUSSION**

    **A. <u>Remand Is Required Because The ALJ Failed to Provide Specific and Legitimate Reasons for Rejecting the Treating Physician's Opinions</u>**

Generally, the opinions of treating physicians are attributed greater weight because treating physicians are "employed to cure and [have] a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Where

the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific, legitimate reasons, supported by substantial evidence in the record. <u>Id.</u>

Here, Dr. Aziz's opinion appears in the medical records from Mesa Counseling Services.[4] There is not a clear contradiction from the opinions rendered by Drs. Kikani and Stolz and the opinions rendered by Dr. Aziz. Where there is no contradiction by another doctor, the ALJ may not reject the treating doctor's opinion without specific and legitimate reasons. Here, no reasons at all were given for rejecting Dr. Aziz's opinion or the subsequent treatment notes from Mesa. As such, remand is required.

Upon remand, the ALJ shall specifically discuss the opinions of Drs. Aziz and Lee and, if those opinions are rejected, provide specific and legitimate reasons for rejecting those opinions. The ALJ must also consider the Clinical Assessment completed by Shirley Quinto. (AR 405).

Defendant contends that this information is irrelevant, in part, because it was during a time "when Plaintiff's substance abuse was very substantial." (JS 6). While it appears that some alcohol abuse may

---

[4] The Commissioner incorrectly characterizes Dr. Aziz's records as a "check off" form. (JS 4). In fact, Dr. Aziz's records include detailed, hand-written notes from his examination and treatment of Plaintiff in 2000.

14

have continued, the record suggests that substance abuse was no longer a problem. Plaintiff testified at the 2001 hearing that he no longer used illegal drugs and there is no evidence in the record of drug use after 1999, when Plaintiff was again released on parole. (AR 93, 58). Plaintiff testified that, while on parole, he was tested monthly for illegal drug use. (AR 59). Had he tested positive for illegal drug use after that date, it is likely his parole would have been revoked. As to alcohol abuse, the medical expert testified that there was no history of it after 2001. (AR 101). Thus, it appears that the medical examinations and treatment of Plaintiff after 2000 may reflect his mental state without the influence of drugs or alcohol. The ALJ incorrectly stated that "substance abuse was very substantial until 2002" (AR 17), but this statement is not supported by either the record evidence or the testimony of the medical expert.

**B. Under the Ninth Circuit's Recent Decision in Stout v. Commissioner, Remand Is Required for The ALJ To Expressly Consider the Lay Witness Testimony**

In determining whether a claimant is disabled, an ALJ must expressly consider lay witness testimony concerning a claimant's ability to work. Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. July 25, 2006); Smolen, 80 F.3d at 1288; 20 C. F. R. §§ 404.1513(d)(4) & (e), and 416.913(d)(4) & (e). The ALJ may discount the testimony of lay witnesses only if she gives "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). See also Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into

account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted)).

Plaintiff references a Daily Activities questionnaire from Ruth Ann Nino, Plaintiff's sister. (JS 6). The Court could not locate this document in the record. Although Plaintiff cites to "AR 80," there in no such questionnaire in the Court's version of the record at AR 80. As such, remand is not required on this basis.

Defendant construes Plaintiff's argument as a contention that the ALJ failed to properly consider the hearing testimony of Plaintiff's girlfriend. (AR 76, 80). Here, the Court agrees and further notes that Plaintiff's sister, Jacqueline Franklin, also testified at the 2001 hearing. (AR 64). In the first decision, the ALJ summarized Plaintiff's girlfriend's testimony. However, he did not provide, as required by Ninth Circuit authority, "reasons germane to this witness" for rejecting her testimony. Plaintiff's girlfriend testified a second time in 2001 and also provided a third party questionnaire. Upon remand, if the ALJ rejects her testimony or Jacqueline Franklin's testimony, the ALJ must provide express reasons in his decision germane to these witnesses, for his rejection. See Stout, 454 F.3d at 1053 (ALJ was required to consider and comment upon uncontradicted lay testimony of claimant's sister and brother-in-law, as it concerned how claimant's impairments impacted his ability to work).

\\
\\

**VIII.     CONCLUSION**

Plaintiff is an individual with a lengthy criminal record and a history of drug and alcohol abuse. These facts render him an unsympathetic claimant for benefits. But whether he is sympathetic or not is not the legal question to resolve. The issue is whether, based upon the extensive medical evidence regarding Plaintiff's mental health, he was disabled from employment for a period of twelve months or longer.

Consistent with the foregoing, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this case for further action consistent with this opinion. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: November 17, 2006

                                    _____/ S /_____
                                    SUZANNE H. SEGAL
                                    UNITED STATES MAGISTRATE JUDGE